# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| OUTLAW LABORATORY, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2299-B |
| | § | |
| SHENOOR ENTERPRISE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Outlaw is a manufacturer of male dietary supplements, the Tristeel Products. Outlaw has sued convenience stores because they "advertise and offer for sale" competing male dietary supplements, the Rhino Products. Outlaw alleges that these retailers have committed false advertising under the Lanham Act because they disseminate false statements through the sale of the Rhino Products; specifically, the Rhino Products are labeled "all natural" and state they contain "no harmful synthetic chemicals." Outlaw alleges that these labels are false because Rhino Products contain "dangerous undisclosed ingredients" typically found only in prescription drugs, not over-the-counter supplements. Outlaw argues these retailers are liable for false advertising because they display and sell the falsely labeled Rhino Products in their stores.

Some of the retailers have appeared and moved to dismiss Outlaw's complaint on various grounds. The Court held a hearing on these motions. At the hearing, the Court dismissed Outlaw's complaint for failing to state a claim on which relief could be granted. *See* Doc. 87, Order. The Court issues this Memorandum Opinion and Order, which is consistent with and elaborates on the reasoning of that ruling.

# I.

# BACKGROUND

*A.* *Factual Summary*

This case arises out of a string of FDA announcements notifying the public that certain male dietary products, including the Rhino Products, contain hidden drug ingredients that could be dangerous. Doc. 1, Compl., ¶¶ 25, 31–32. The FDA warned that Rhino Products were tested and found to contain sildenafil and other undisclosed chemicals. *Id.*; *see also* Doc. 59-1, Ex. A ("FDA News Release"), 1–4. Sildenafil is the active ingredient in the prescription drug Viagra. The FDA has recognized that it is illegal to sell a drug containing sildenafil without a prescription. The Rhino Products do not disclose that they contain sildenafil, which is dangerous for some people because it can cause serious side effects. Doc. 1, Compl., ¶¶ 31–32.

Plaintiff Outlaw is a manufacturer and distributor of male dietary supplements, the Tristeel Products. *Id.* ¶¶ 58–59. Plaintiff alleges that it uses only all-natural ingredients in the Tristeel Products. *Id.* Plaintiff alleges it sells the Tristeel products through its website and at retail locations across the United States. *Id.* Plaintiff alleges all-natural products like the Tristeel Products are more expensive to manufacture than synthetic products are. *Id.*

Sometime after these FDA announcements were made, Outlaw filed this lawsuit. Doc. 1, Compl. The complaint alleges false advertising under the Lanham Act related to the sale of the Rhino Products. *Id.* ¶¶ 21–30. Named in the complaint are fourteen retail outlets (gas stations and convenience stores) that allegedly sell the Rhino Products. *Id.* ¶¶ 44–57. Outlaw generally alleges that these retailers ("Retail Defendants") did the following: Retail Defendants "are engaged in a scheme to distribute and sell" Rhino Products; Retail Defendants have "knowingly and materially

participated in false and misleading marketing, advertising, dissemination and labeling to promote and sell the Rhino Products," all of which have been the subject of an FDA announcement stating they contain the hidden drugs, including sildenafil; the hidden drugs either require a prescription or are not FDA approved; the Rhino Products do not disclose that they contain these drugs; instead, the Rhino Products have labels stating they are "all natural," with "no harmful synthetic chemicals," do not require a prescription, and have limited side effects. *Id.* ¶¶ 21–30. Further, Outlaw alleges that Defendants "advertise and offer for sale" these Rhino products. *Id.* ¶ 61. Outlaw alleges that Defendants "mislabel" the Rhino Products and thus make "numerous false and misleading representations. *Id.* ¶ 62. Outlaw alleges "Defendants knew, or should have known, that their Rhino Products contain hidden drug ingredients," and that Defendants failed to disclose this to their customers. *Id.* ¶¶ 63 & 65. Outlaw alleges that these misrepresentations are material and that the goods have been introduced into interstate commerce. *Id.* ¶¶ 67–68. Finally, Outlaw alleges it has been injured by Defendants' false and misleading statements because it has suffered commercial and reputational damage in the sale of its competing Tristeel Products. *Id.* ¶ 69.

For relief, Outlaw requests preliminary and permanent injunctions, compensatory damages, disgorgement of Defendants' profits, restitution, treble damages, punitive damages, and costs and fees. *Id.* at 13–14.

B.    *Procedural Background*

Outlaw filed this complaint on August 30, 2018 (Doc. 1). Outlaw brings the same false-advertising claim under the Lanham Act against all Defendants. The complaint named 14 Retail Defendants and 1–100 unnamed John Does. Here is a list of the named Defendants and their status in this case:

(1) Defendants Shenoor Enterprise, Inc., Rohail Enterprise, Inc., Kzak Enterprises, Inc., and 8th St. Petroleum Inc. have filed motions to dismiss (Docs. 56 & 64);

(2) A&Z Irving Investments, Inc. has joined another Defendant's motion to dismiss (Doc. 37) (joining Doc. 10);

(3) Sahil Ismail Inc. has filed an answer (Doc. 9) and an out-of-time motion to dismiss (Doc. 40);

(4) M&V Enterprise, Inc. has filed an answer (Doc. 7) and a motion to dismiss (Doc. 6);

(5) Bansal Properties has filed a motion to dismiss (Doc. 21);

(6) Refai Investments, Inc. has appeared *pro se* and filed an answer (Doc. 20);

(7) Defendants PMR Oil & Gas Company, Inc., Mola Investments Inc., and MacLaren Group Ops., LLC have settled with Outlaw and have been terminated from the case; and

(8) Two Defendants, Cosectra Consortium, Inc. and Swami Management, have not appeared in the case despite being served. Outlaw has not yet moved for default judgment as to these two Defendants.

Defendants moved to dismiss the case on substantially the same grounds. Outlaw has responded to these motions to dismiss in a timely manner. On February 27, 2019, the Court held a hearing on these motions to dismiss; counsel for the parties that filed motions appeared and argued their positions. After considering the arguments, the Court dismissed Plaintiff's complaint. Doc. 87. The Court issues this Memorandum Opinion and Order, which is consistent with and elaborates on the reasoning of that ruling.

## II.

## LEGAL STANDARD

A.      *Federal Rule of Civil Procedure 12(b)(1)*

"'Federal courts are courts of limited jurisdiction.'" *MacKenzie v. Castro*, No. 3:15-cv-0752-D,

2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute. Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge that jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (internal citations omitted). "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, No. 3:14-cv-3089-D, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015) (citing *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013)).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "when a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.* In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So Plaintiff must prove jurisdiction exists. Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)).

Here, Defendants filed their Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court may consider just "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And if they sufficiently allege a claim for recovery, then the complaint stands and the court must

entertain the suit. *Id.*

B.    *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

# III.

# ANALYSIS

A.    *Outlaw's Standing*

Defendants first challenge Plaintiff's standing to bring its claim under both the constitution and the Lanham Act. Article III of the Constitution requires a litigant to have standing to bring a challenge in federal court. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Statutory standing, on the other hand, is a "straightfoward question of statutory interpretation" that asks "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under [the statute]." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128–29 (2014). Challenges to constitutional standing are properly addressed under Rule 12(b)(1), whereas challenges to statutory standing are addressed under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

While this Order will focus mainly on the Defendants' arguments to dismiss Plaintiff's complaint for failing to state a false-advertising claim, the Court is also concerned about Plaintiff's standing, both constitutional and statutory. Specifically, the Court is concerned that Plaintiff's allegations have not sufficiently shown: (1) that under Article III, its injury is traceable to the Defendants' alleged conduct, *Lujan*, 504 U.S. at 560–61, and (2) that under the Lanham Act, its injury was proximately caused by Defendants' conduct. *Lexmark*, 572 U.S. at 132–33. The Court has dismissed Plaintiff's original complaint and ordered it to replead to fix the issues that resulted in dismissal. Doc. 87. As discussed in detail below, the Court did so because Plaintiff failed to allege

facts that show that Defendants made false statements in the context of commercial advertising or promotion. The Court finds that Plaintiff's failure to state a claim is also related to Plaintiff's standing. Specifically, it is difficult to see how merely placing products on display and selling them qualifies as conduct that caused Plaintiff's injuries under Article III or the Lanham Act. Thus, the Court also advises Plaintiff that, because a federal court must be assured of its jurisdiction before an action is allowed to proceed, it would be wise for Plaintiff's amended complaint to, if possible, address the above-noted concerns regarding its standing. While the Court does not rule on Plaintiff's standing at this time, the Court will broach the issue after Plaintiff files its amended complaint.

B.      *Failure to State a Claim for False Advertising*

The principal dispute in this case is whether a defendant who merely sells a product at a retail outlet can be held liable for false advertising under the Lanham Act. Outlaw asserts it can; Defendants assert no such cause of action exists. There is scarce law supporting either side's position. To start, § 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

60 Stat. 441, codified at 15 U.S.C. § 1125(a)(1)(B). To state a claim under this section, a plaintiff must allege:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured

as a result.

*Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citations omitted) (cleaned up).

As stated, Outlaw asserts that it can successfully state a false-advertising claim under this act because the labels affixed to the Rhino Products are materially false, Defendants sell these products at their stores, and Defendants know that the Rhino Products are falsely labeled. In response, Defendants argue there are multiple reasons why Outlaw has failed to state a claim for false advertising; the Court focuses on Defendants' argument that Plaintiff has not adequately alleged the first element of its claim—*i.e.*, that Defendants made a false statement of fact about its product in commercial advertising or promotion. This argument is strong because it appears that the nonparty manufacturer of the Rhino Products created and made the false labels at issue; Plaintiff has only alleged that Retail Defendants *sell* these products. The question then is whether a defendant that merely offers a product for sale makes a false statement about its product in commercial advertising or promotion.

The Court holds that Plaintiff's complaint fails to sufficiently allege that Defendants made a false statement in the context of commercial advertising or promotion. To make out a claim for false advertising, a plaintiff must first show "that a party made a false or misleading statement of fact about his own or another's product in the context of 'commercial advertising or promotion.'" *Transcom Enhanced Servs., Inc. v. Qwest Corp.*, 2010 WL 2505606, at *4 (N.D. Tex. June 18, 2010). To qualify as a statement made in the context of commercial advertising or promotion, the representation should be made for "the purpose of influencing consumers to buy defendant's goods or services" and "disseminated sufficiently to the relevant purchasing public." *Seven-Up Co. v. Coca-*

*Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996).

Here are the specific allegations that Plaintiff argues satisfy this element of its claim:

Paragraph 23: "The Retail Defendants profit from the sale of the Rhino Products **by disseminating false statements** including that the Rhino Products are 'all natural,' contain 'no harmful synthetic chemicals,' 'no prescription necessary,' and have limited side effects. Aside from these **patently false statements**, Defendants have failed to disclose the true nature of the Rhino Products to their customers, even though they are aware of the dangerous secret ingredients."

Paragraph 28: "Defendants have knowingly and materially participated in false and misleading marketing, advertising, dissemination and labeling to promote and sell the Rhino Products . . . ."

Paragraph 36: "The Supplier Defendants distribute the Rhino Products through a network of Retail Defendants, detailed herein, who own and operate independent businesses selling the Rhino Products, **disseminate false claims about the Rhino Products**, and profit from the sale . . . ."

Paragraph 39: "Defendants **make numerous false and misleading representations regarding the Rhino Products**. For example, and without limitation, Defendants **mislabel the Rhino Products** as 'all natural' 'dietary supplements,' and **advertise and promote** such products as containing 'no chemicals,' 'all natural herbal formula,' and 'no prescription necessary,' among other misrepresentations."

Doc. 1, Compl.

Notably, the above allegations do not distinguish the individual Defendants from each other, and attempt to conflate the named Retail Defendants with the unnamed manufacturer and wholesale suppliers. Indeed, the only allegations that separate the actions of each individual Retail Defendant are found at paragraphs 44–57 of the complaint. But these individualized allegations do no more than allege that the Retail Defendant "owns and operates" a store at a certain address and "promotes, advertises, disseminates and offers for sale" the Rhino Products at its store. *Id.* ¶ 44; *see id.* ¶¶ 45–57 (repeating the same allegations for each Retail Defendant). What's more, the *only* false statements Plaintiff identifies are the **labels** on the Rhino Products. Plaintiff claims that

-10-

"Defendants," including the unnamed Manufacturer Defendants, are responsible for mislabeling the products. *Id.* ¶¶ 31, 39. Retail Defendants deny any such involvement in making these labels and state, quite persuasively, that it is implausible that independent retailers who merely sell the products had any influence on product labeling.

Plaintiff's counsel confirmed at the hearing that Plaintiff does not challenge this contention; instead, Plaintiff's argument is that its claim should survive because simply putting a product that is falsely labeled into commerce is sufficient to make out a false advertising claim. Plaintiff relies on the text of the Lanham Act and various cases to support its position.

The Court starts with Plaintiff's argument that the text of the Lanham Act supports its claim in this case. The relevant portion of the Lanham Act is cited above. *See* Section III.B *supra*, at 8. Plaintiff argues that merely selling the falsely labeled Rhino Products supports a claim for false advertising under the text of the statute because it necessarily involves the "use[] in commerce" of a "false or misleading description of fact, or . . . representation of fact" "in connection with any goods or services, or any container for goods[.]" 15 U.S.C. § 1125(a)(1)(B). However, the statute also requires a person to "in commercial advertising or promotion, misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, service, or commercial activities," in order to be held liable. *Id.* While Plaintiff may be correct that the goods or "container for goods" that relate to the false or misleading statement may be "another person's goods," as is the case with the Rhino Products, a defendant still must, in the context of commercial advertising or promotion, "misrepresent[]" something about the goods. *Id.* As such, the first element of a false-advertising claim in the Fifth Circuit is "that the defendant made a false statement of fact about its product in commercial advertising." *Logan*, 263 F.3d at 462. Plaintiff cannot plead around

this element of its claim by citing only to the portions of the statute that seem to support its claim; instead, Plaintiff must plead facts that make it plausible that Defendants in this case made a false statement. Whether Plaintiff has sufficiently plead such facts is not readily apparent from the text of the statute.

Turning to Plaintiff's cases, the Court first notes Plaintiff has failed to cite a case where a court has held a defendant liable for false advertising under the Lanham Act for merely displaying and selling goods in a retail store. Instead, Plaintiff's cases are either not binding on this Court or not directly applicable to a claim like this one.

Plaintiff first cites *Gucci America, Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065–66 (S.D.N.Y. 1991). Plaintiff broadly interprets *Gucci* for the proposition that "[f]ederal courts have consistently held that anyone who misrepresents goods or who places such misrepresented goods in commerce can be held liable under the Lanham Act." Doc. 71, Outlaw's Resp., 10–11. This appears to be a stretch, at least as applied here. To start, *Gucci* is a trademark-infringement case, not a false-advertising case. *Gucci Am.*, 759 F. Supp. at 1061–62. The *Gucci* court had to decide whether a retailer that sold counterfeit Gucci products could be held liable for trademark infringement. *Id.* Trademark infringement under the Lanham Act requires a plaintiff to prove different elements than false advertising; specifically, it requires a plaintiff to prove (1) they owned a trademark and (2) defendants' use of a trademark created a likelihood of confusion. *Id.* at 1063. It does not require that the defendant make a false statement. Nonetheless, Plaintiff argues *Gucci* supports their claim for false advertising because the *Gucci* court noted that "plaintiffs are entitled to relief even against a totally innocent infringer." *Id.* at 1066. But this misses the point—here, Outlaw needs to prove the Retail Defendants *each* made false statements in connection with advertising or promoting the Rhino

-12-

Products. While Outlaw may be correct that it does not need to show that Defendants made the statement with an intent to deceive, it still needs to show that Defendants actually made some false statement in commercial advertising or promotion.[1] *Gucci* does not address this issue and thus does not get Plaintiff past this first hurdle.

Next, Plaintiff relies on an unpublished order from the Central District of California. *See* Doc. 81-1, *JST Distrib. v. CNV, et al.*, 2:17-cv-06264 (C.D. Cal. Mar. 7, 2018). The Court acknowledges that this case is factually similar to the case at hand—in *JST Distribution*, a manufacturer/seller of male-enhancement products sued the owner of a website that allegedly advertised and sold competing male-enhancement products that contained illicit pharmaceutical ingredients. *Id.* at 1–2. The plaintiff alleged that the website owner "was at the center of a massive hub-and-spoke conspiracy" that involved the sale of this illicit product and falsely advertised products on twenty-two different websites. *Id.* Similar to this case, the defendant website owner filed a motion to dismiss; in it, the defendant argued that it did not make the illicit male-enhancement products or the allegedly false labels affixed to them, and it did not create the advertisements associated with the products, which it allegedly posted on its website and disseminated to the other twenty-two websites. *Id.* at 4–5. The district court rejected the website owner's argument. *Id.* at 5. The district court agreed with the defendant that the manufacturer of the male-enhancement products made the false advertisements. But the court held the website owner could still be held liable because the plaintiff alleged that the

---

[1] Plaintiff's reliance on *Frostie Co. v. Dr. Pepper Co.*, 341 F.2d 363, 366 (5th 1965) is similarly mistaken. Like *Gucci*, Plaintiff argues this case supports its claim because it shows that a false or misleading statement is not required to be made with an intent to deceive under the Lanham Act. Doc. 80, Pl.'s Resp., 11 & n.6. But like *Gucci*, *Frostie* is a trademark-infringement case. And more importantly, *Frostie* does not deal with the issue before this Court: whether a retailer who merely displays and sells products makes a false statement in commercial advertising.

website owner "*disseminated* the false advertising through its website" and various other websites. *Id.* (emphasis added).

Here, Retail Defendants argue this case is easily distinguishable because (1) Plaintiff has not made allegations that Defendants ran websites that published false advertisements and (2) merely placing a product for sale in a brick-and-mortar store is a far cry from disseminating advertisements on multiple websites. The Court agrees with Defendants—Plaintiff has alleged only that Retail Defendants sold the Rhino Products in store. This does not rise to the level of "dissemination" of false advertising, as may be the case when one publishes information on a network of websites and provides the information to other websites.

Finally, Plaintiff relies on an order out of the Northern District of Georgia in a related *Outlaw* case. *See* Doc. 62, Mot. for Judicial Notice (attaching order in *Outlaw Lab., LP v. US 1 Novelties LLC*, 1:18-cv-2065-AT (N.D. Ga. Nov. 28, 2018) ("N.D. Ga. Order")). But in that case, the district court's order dealt only with the issue of whether Outlaw had standing to bring its claim. N.D. Ga. Order, 7. Thus, that order is not directly relevant in determining whether Outlaw has failed to state a claim under 12(b)(6). However, it is notable that the Georgia court found that "it is unclear from the allegations as to the exact nature and extent of [defendant's] participation" and whether that defendant took the "passive" role of merely displaying the products or actively advertised and promoted the availability of the products. *Id.* at 18. It seems like the court was implying in that case that if the allegations were alleging only the former, that would have been insufficient to show the necessary conduct for statutory standing. Applying that same reasoning in the context of this 12(b)(6) motion, there is nothing in the complaint that alleges the Retail Defendants here did anything more than passively offer the Rhino Products for sale.

Defendants provide the Court with a few cases as well that, while not binding, do more directly address the issue at hand. Defendants argue their cases show that courts have refused to hold retailers liable for false advertising when they merely display and sell products. First, Defendants rely on *Cohn v. Kind, LLC*, where the Southern District of New York held that a plaintiff had failed to state a claim for false advertising under New York law because the plaintiff alleged only that retailers sold power bars with false statements on the wrapper. 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015). The court found that "[S]imply authorizing the sale" of the power bars was not sufficient to constitute advertising. *Id.* If not for the fact that this case was brought under New York false-advertising laws, it would be very similar to this case.

Next, Defendants cite *Optimum Technologies, Inc. v. Home Depot USA, Inc.*, where the Northern District of Georgia granted summary judgment against a plaintiff on its Lanham Act false-advertising claim. 2005 WL 3307508, at *6 (N.D. Ga. Dec. 5, 2005). The plaintiff sued Home Depot for displaying a competitor's product under signs labeled with the plaintiff's product name. *Id.* The district court held that the claim against Home Depot, a retailer, failed because "product placement is not commercial speech" for the purposes of the Lanham Act. *Id.* Thus, the court found that displaying items for sale did not qualify as commercial advertising or promotion, and thus was not actionable. *Id.* Here, Defendants argue this case is applicable because Home Depot was not held liable for false advertising based solely on displaying products at its store. The *Optimum* court held as such even though Home Depot's in-store employees engaged in the affirmative conduct of misplacing the products under incorrect labels and making statements to customers about those products—facts that Plaintiff does not allege occurred here. Plaintiff argues this case is distinguishable because it was decided at the summary-judgment stage, not the pleading stage, and

because it did not involve an allegedly mislabeled product. While the Court appreciates those differences, it does find this case persuasive because it was decided under the Lanham Act and concluded that mere product placement, even with affirmative action taken by a retailer's employee, did not amount to false statements in the context of advertising.

Finally, Defendants cite a number of cases that involve state-law false-advertising claims, negligent misrepresentation claims, or other state-consumer-law claims. Generally, these cases hold that a defendant should not be liable, whatever the cause of action, for merely selling a product affixed with a false label, so long as the defendant had no role in creating the label.[2] However, these cases are, at best, minimally persuasive because they are out-of-circuit or state-court cases, not decided under the Lanham Act's false-advertising cause of action. In sum, while Defendants' cases are also not directly on point and not controlling, they are arguably more persuasive than Plaintiff's cases because they do address the issue of whether a defendant that is only alleged to have sold a product can be held liable for false advertising.

On its own, the Court has also found additional cases that support the Defendants' position. First, a federal district court in Virginia dismissed a plaintiff's complaint for failing to state a claim

---

[2] Defendants cite the following cases. *Burger v. Lowe's Home Centers, LLC,* 2016 WL 1182266, at *2 (Cal. App. 4th Dist., 2016), *reh'g denied* (Apr. 26, 2016) ("The trial court agreed with [the retailer's] argument a retailer cannot be held liable for the statements of others by merely placing the product on its shelves for resale. The court determined the false advertising claim was based solely on the product's packaging, which was produced by the manufacturer or distributor and not [the retailer]."); and *see In re Hydroxycut Mktg. & Sales Practices Litig.,* 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011) ("Plaintiffs suggest that the Defendant Retailers can be held liable under the consumer protection laws for placing the falsely advertised Products on the shelf and failing to disclaim the Manufacturer Defendants' representations. However, none of the cases cited by Plaintiffs . . . supports this legal proposition."); and *see Fagan v. AmerisourceBergen Corp.,* 356 F. Supp. 2d 198, 219 (E.D.N.Y. 2004) (drugstore was not liable for negligent misrepresentation for selling mislabeled drugs without evidence that it "itself, made any false statement or material misrepresentation" or that it "affixed the label, which contained the alleged misrepresentation").

-16-

for false advertising under the Lanham Act because the plaintiff did not show that the defendants made a false statement in commercial advertising. *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 550–51 (E.D. Va. 2015). In *Baldino's*, a licensed locksmith company sued Google and other online directories for false advertising because Google allowed unlicensed locksmiths to post advertisements on its website. *Id.* at 546. The plaintiff claimed these advertisements were falsely representing that the unlicensed locksmiths were licensed. The district court reasoned that "[t]o hold Defendants liable for misinformation appearing on their websites, which originated with third parties, is a drastic conclusion the Court declines to endorse." *Id.* at 551. Even though the advertisements could be found on Google's website, the Court declined to hold Google liable because "the unlicensed and illegal locksmiths are the advertisers that made" the false statements. *Id.* The district court's decision to dismiss was affirmed by the Fourth Circuit. 624 F. App'x 81 (4th Cir. Dec. 4, 2015). The *Baldino's* case is similar to this case because Plaintiff here does not allege that Defendants, like Google, had a role in creating the advertisements and labels associated with the Rhino Products—they only offered the products for sale in their stores. And, as the *Baldino's* court reasoned, displaying an advertisement created by a third party should not be considered, in itself, the making of a false statement under the Lanham Act.

Second, in a district-court case from Washington, the court granted summary judgment against a plaintiff on its false-advertising Lanham Act claim because the plaintiff failed to show the defendant made a false statement in advertising. *Lasoff v. Amazon.com, Inc.*, 2017 WL 372948, at *8 (W.D. Wash. Jan. 26, 2017). Relying on *Baldino's*, the Washington court found that Amazon could not be held liable for "truthfully depict[ing]" products of third-party sellers that were labeled with false representations. *Id.* The court found that "liability lies with the vendors who created the

misleading content, not the service providers [(Amazon)] who transmit that content." *Id.* This case

is arguably more factually similar than *Baldino's* because Amazon, like the Retail Defendants here,

is actually selling the third-party product, not just posting third-party information like Google was

in the *Baldino* case. However, the *Lasoff* court was deciding a motion for summary judgment, not a

motion to dismiss. Moreover, the *Lasoff* court may not have reached the same conclusion if Amazon

had actual knowledge that the advertisements were false, as Plaintiff argues Defendants had here.

*See id.* Nonetheless, the *Lasoff* court's conclusion was mostly a legal one, relying on little-to-no record

evidence. Further, here, Plaintiff has provided only conclusory allegations that each Defendant had

knowledge of the falsity of the Rhino Products' labels. And a court is not required to accept such

"conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Office of Med.*

*& Sci. Justice, Inc. v. DeShong*, 596 F. App'x 328 (5th Cir. 2015).

Finally and significantly, the policy concerns stemming from a decision that holds retailers

liable for false advertisements created and controlled solely by third parties could be severe. Here,

Defendants undoubtedly sell many products—should they be responsible for scrutinizing and

determining the veracity of every claim on every product label in their stores simply because they sell

the product? At least under a false-advertising theory, the Court holds no; instead, to support a false

advertising claims against these retailers, Plaintiff must plead in good faith allegations that support

a finding that Defendants made false statements in the context of advertising or promotion. To be

sure, the Court is not holding that retailers or sellers can never be held liable for false advertising.

The Court instead holds that in this case the Retail Defendants cannot be held liable for false

advertising based solely on allegations that they displayed and sold the Rhino Products in their stores.

In summary, based on Plaintiff Outlaw's allegations and the applicable case law discussed

above, the Court dismisses Plaintiff's complaint for failing to state a claim because Plaintiff has not alleged that Defendants made a false statement in the context of commercial advertising or promotion. Plaintiff has not pointed the Court to a case where, under the Lanham Act, a court has held that mere retailers, such as these Defendants, are liable for solely placing a product on their shelves. In fact, as seen from other Lanham Act cases like *Lasoff* and *Baldino's*, federal courts appear unwilling to entertain false-advertising claims that are based almost entirely on false statements that originate with third parties. And Defendants' cases involving state-law false-advertising claims, like *Cohn*, seem to support the same. *See* cases cited *supra* note 2. Finally, as Defendants argue, there are strong policy-grounded arguments that militate against imposing false-advertising liability in these circumstances; to elaborate, if these claims are permitted, the scope of the Lanham Act would be dramatically expanded. False-advertising cases like this one would turn retailers into the guarantors of manufacturers that falsely label their products. The Court declines to construe the Lanham Act so broadly. For these reasons, the Court dismisses Plaintiff's complaint for failing to state a claim for false advertising under the Lanham Act.

C.     *Repleading*

"When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile." *Lawal v. Lynch*, 156 F. Supp. 3d 846, 851 (S.D. Tex. 2016) (citing *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")).

"However, a plaintiff should be denied leave to amend a complaint if the court determines that 'the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face.'" *Id.* (quoting 6 Wright & Miller, <u>Federal Practice and Procedure</u> § 1487 (2d ed. 1990)).

Here, Plaintiff has not yet amended its complaint, and at the hearing the Court granted Plaintiff the opportunity to file an amended complaint. Doc. 87. However, to show that it is entitled to relief on its false-advertising claim, Plaintiff must sufficiently allege that the Retail Defendants themselves made false statements or representations in the context of commercial advertising or promotion. As discussed above and at the hearing, the Court finds that the current allegations are insufficient; thus, if Plaintiff chooses to replead, it must allege, in good faith, additional facts indicating that Defendants did more than offer the Rhino Products for sale in their stores. Further, to give the requisite notice to each Defendant, Plaintiff needs to avoid improper "group pleading" that does not distinguish the conduct of the individual Defendants. Based on Plaintiff counsel's representations at the hearing, the Court is skeptical that Plaintiff can allege any set of facts against the Retail Defendants that would survive a motion to dismiss on the same grounds.

Nonetheless, the Court grants Plaintiff an opportunity to file an amended complaint within thirty days (30) of the date of the docket-text order entered after the February 27 hearing. Doc. 87. If Plaintiff chooses to file an amended complaint, the Court will postpone the deadlines for Defendants to file a responsive pleading. The Court will first review the amended complaint to determine if Plaintiff sufficiently cured the defects noted at the hearing and in this Order, and then, if the amended complaint survives this initial scrutiny, issue an order requiring Defendants to file responsive pleadings. If the amended complaint does not cure the noted defects, the Court may dismiss the case with prejudice or again order Plaintiff to replead. Finally, the Court warns Plaintiff

that "re-litigating the issues raised in the instant motions through future frivolous, repetitive filings will result in the imposition of sanctions, including dismissal, monetary sanctions, and restrictions on the ability to file pleadings in this court." *United States v. Hildenbrand*, 2017 WL 3381929, at *2 (N.D. Tex. June 6, 2017); *see also Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 n.2 (5th Cir. 1988) ("We caution . . . that unless [Plaintiff] can, in good faith, allege additional facts to give some substance to his claims . . . further pleadings that just repeat in essence the allegations already made in previously dismissed pleadings may subject him to sanctions under Rule 11, Fed. R. Civ. P.").

## V.

## CONCLUSION

After considering the various motions to dismiss (Docs. 6, 10, 21, 37, 40, 56, & 64), the parties' responsive briefing, and the arguments presented at the hearing, the Court **GRANTS** Defendants' motions because Plaintiff has failed to state a claim under the Lanham Act. The Court expresses no opinion on the remainder of Defendants' arguments, aside from the above-noted concerns about Plaintiff's standing. Plaintiff has thirty days (30) from the date of the hearing to file an amended complaint that addresses the issues noted above and at the hearing. If Plaintiff files an amended complaint, Defendants shall not be required to answer or respond to such document until the Court orders them to do so.

Additionally, the Court **GRANTS** Plaintiff's motions for judicial notice under Federal Rule of Evidence 201 (Docs. 59 & 62).

SO ORDERED.
MARCH 4, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE